IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KEITH JONES                                                                                               PLAINTIFF

v.                                                                           CIVIL ACTION NO. 1:15-cv-00185-GHD-DAS

FXI, INC. d/b/a Foamex Innovations
Operating Company                                                                                         DEFENDANT

### MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court is a motion for summary judgment [44] filed by Defendant FXI, Inc. doing business as Foamex Innovations Operating Company ("Defendant"). Plaintiff Keith Jones ("Plaintiff") has filed a response, and Defendant has filed a reply. Upon due consideration, the Court finds that the motion for summary judgment must be granted in part and denied in part, as demonstrated below.

### *I.     Factual and Procedural Background*

Plaintiff brings this fraud action against Defendant, his former employer. Defendant previously employed Plaintiff as an AutoCAD technician. Pl.'s First Am. Compl. [25] ¶ 6; Def.'s Answer [30] ¶ 6. Defendant terminated Plaintiff's employment for violations of Defendant's attendance policy, which provides for employment termination when an employee accrues four negative occurrences of absences and/or tardiness. Pl.'s First Am. Compl. [25] ¶¶ 7–8; Def.'s Answer [30] ¶¶ 7–8. Defendant utilized Attendance Status Notification forms as documentation of the employee's absences and tardiness. Pl.'s First Am. Compl. [25] ¶ 10; Def.'s Answer [30] ¶ 10. Plaintiff alleges, but Defendant denies, that Defendant was required by its own attendance policy to notify Plaintiff of each occurrence of a violation of the attendance policy through the Attendance Status Notification form; that the form was signed by the

1

employee, the employee's supervisor, and the human resources manager; and that at the time of Plaintiff's termination, Defendant had not provided Plaintiff with an Attendance Status Notification form for each occurrence upon which the termination was based. Pl.'s First Am. Compl. [25] ¶¶ 9–11; Def.'s Answer [30] ¶¶ 9–11. The parties do not dispute, however, that following Plaintiff's termination he applied to the Mississippi Department of Employment Security ("MDES") for unemployment compensation benefits. Pl.'s First Am. Compl. [25] ¶ 12; Def.'s Answer [30] ¶ 12.

Plaintiff alleges that "[i]n an effort to deprive [Plaintiff] of his unemployment compensation benefits, [Defendant], acting through its employees and agents, devised a scheme to forge [Plaintiff's] signature on several Attendance Status Notification forms and submit the forged forms to the [MDES]." Pl.'s First Am. Compl. [25] ¶ 13. Plaintiff further alleges that "[i]f successful in convincing the MDES to deny [Plaintiff's] claim for unemployment compensation benefits [Defendant] would reduce its potential tax liability to the State of Mississippi by avoiding an increase in its employer rating upon which its tax liability is based." *Id.* ¶ 14. The parties do not dispute that on September 15, 2014, Defendant's agent, ADP, faxed Attendance Status Notification forms to the MDES and that the MDES subsequently denied Plaintiff's claim for unemployment compensation benefits. *Id.* ¶¶ 15, 20; Def.'s Answer [30] ¶¶ 15, 20. Plaintiff alleges that five of the forms were "forgeries created by [Defendant] by using [Plaintiff's] signature from [another form] and mechanically reproducing his signature, apparently along with the signature of his supervisor and the human resources coordinator . . . ." and that these forms were both faxed and mailed in interstate commerce to the MDES. Pl.'s First Am. Compl. [25] ¶¶ 18, 21.

Plaintiff timely appealed the MDES denial of his claim for unemployment compensation benefits. *Id.* ¶ 24; Def.'s Answer [30] ¶ 24. Defendant faxed exhibits to the MDES and mailed those exhibits to Plaintiff, as well. Pl.'s First Am. Compl. [25] ¶ 25; Def.'s Answer [30] ¶ 25. Plaintiff alleges, and Defendant denies, that Defendant took this action in furtherance of its continuing scheme to deprive Plaintiff of unemployment compensation benefits. Pl.'s First Am. Compl. [25] ¶ 26. On October 31, 2014, the MDES-assigned Administrative Law Judge ("ALJ") held a telephonic appeal hearing; in connection with those proceedings, Defendant introduced into evidence Attendance Status Notification forms. *Id.* ¶¶ 24, 28; Def.'s Answer [30] ¶¶ 24, 28. Plaintiff alleges, and Defendant denies, that during the hearing, Defendant made materially false statements under oath through its employer representative and human resources coordinator in furtherance of its continuing scheme to deprive Plaintiff of unemployment compensation benefits. Pl.'s First Am. Compl. [25] ¶ 29; Def.'s Answer [30] ¶ 29. During the hearing, Plaintiff claimed that several of the forms were forgeries. Pl.'s First Am. Compl. [25] ¶ 30; Def.'s Answer [30] ¶ 30. Defendant's human resources coordinator and Plaintiff's former supervisor testified at the appeal hearing; this testimony was within the course of scope of their respective employment with Defendant. Pl.'s First Am. Compl. [25] ¶¶ 32, 40; Def.'s Answer [30] ¶¶ 32, 40. After the hearing, the ALJ issued his decision, which Plaintiff attaches to his first amended complaint. *See* ALJ Decision [25-2]. In that decision, the ALJ found that Plaintiff's signature had been forged on several of the Attendance Status Notification forms and that Defendant had predicated fraud upon the court. Pl.'s First Am. Compl. [25] ¶¶ 34–35; Def.'s Answer [30] ¶ 34–35. Aggrieved, Defendant filed an appeal with the MDES Board of Review. Pl.'s First Am. Compl. [25] ¶ 36; Def.'s Answer [30] ¶ 36. Plaintiff alleges, and Defendant denies, that the filing of this appeal with the MDES Board of Review was an act in furtherance

of a continuing scheme to deny Plaintiff unemployment compensation benefits. Pl.'s First Am. Compl. [25] ¶ 37. The Board of Review affirmed the ALJ's decision. Pl.'s First Am. Compl. [25] ¶¶ 38–39; Def.'s Answer [30] ¶¶ 38–39. Plaintiff asserts the following state-law claims against Defendant: fraud, forgery, the common-law tort of outrage, tortious interference with prospective advantage, and negligent training/failure to train and supervision.

After Defendant filed its amended answer [30] to Plaintiff's first amended complaint [25], the parties engaged in discovery. Subsequently, on November 21, 2016, Defendant filed the present motion for summary judgment [44].

## *II. Summary Judgment Standard*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by

. . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis and Discussion

As stated above, Plaintiff asserts the following claims against Defendant under Mississippi law: fraud, forgery, the common-law tort of outrage,[1] tortious interference with prospective advantage, and negligent training/failure to train and supervision.

Defendant argues that summary judgment is appropriate for the following reasons: (1) Plaintiff's intentional infliction of emotional distress claim fails, because it is (a) barred by the applicable statute of limitations and (b) fails on its merits; (2) Plaintiff's fraud claim fails, because Plaintiff never relied on the allegedly forged Attendance Status Notification forms; (3) Plaintiff's tortious interference with a prospective advantage claim fails, because Plaintiff did not

---

[1] Under Mississippi law, an outrage claim is tantamount to an intentional infliction of emotional distress claim. *Raddin v. Manchester Educ. Found., Inc.*, 175 So. 3d 1243, 1252 (Miss. 2015); *Jones v. City of Hattiesburg*, No. 2015-CA-00923-COA, 2017 WL 194252, at *2 n.1 (Miss. Ct. App. Jan. 10, 2017) (citing *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 311–12 (5th Cir. 2013) (per curiam) ("Mississippi law considers [a] common-law-tort-of-outrage claim equivalent to [an] intentional-infliction-of-emotional-distress claim . . . .")). Thus, the Court considers Plaintiff's common-law tort of outrage claim as an intentional infliction of emotional distress claim.

have a business relationship with the MDES; and (4) Plaintiff's negligent training and supervision claim fails, because Defendant did not owe a duty to Plaintiff to train its employees on their ethical obligations in handling unemployment claims. The Court examines these arguments with respect to the claims asserted by Plaintiff. The Court then examines the argument raised by Plaintiff in its response that Defendant is collaterally estopped from denying it committed forgery based on the factual findings of the MDES.

**(1) Intentional Infliction of Emotional Distress**

In the motion for summary judgment, Defendant makes two arguments supporting dismissal of the intentional infliction of emotional distress claim: (a) that the claim is barred by the statute of limitations, and (b) that the claim fails as a matter of law. As demonstrated below, the Court finds that both of these arguments are not well taken and that the intentional infliction of emotional distress claim survives summary judgment.

**(a) Intentional Infliction of Emotional Distress—Statute of Limitations**

First, Defendant argues that the intentional infliction of emotional distress claim is barred by the statute of limitations, which began to run no later than October 24, 2014, when Plaintiff received the copies of the allegedly forged documents submitted to the MDES, and that because Plaintiff failed to file his complaint on or before October 24, 2015, the claim is time barred by Mississippi's one-year statute of limitations for intentional torts. *See Raddin v. Manchester Educ. Found., Inc.*, 175 So. 3d 1243, 1252 (Miss. 2015) (citing MISS. CODE ANN. § 15–1–35).

Plaintiff argues in response that his claim did not accrue until the date of the appeal hearing before the MDES on October 31, 2014, because the outrageous acts constituting the tort did not occur until that day. Specifically, Plaintiff maintains that on the day of the MDES appeal hearing Defendant admitted into evidence documents containing Plaintiff's forged signature to

persuade the MDES to deny Plaintiff's claim for unemployment benefits. Further, Plaintiff maintains that Defendant also on that day made false representations under oath regarding the validity of the signatures on the forged documents. Thus, Plaintiff maintains that his intentional infliction of emotional distress claim is not barred by the statute of limitations.

With respect to the statute of limitations on an intentional infliction of emotional distress claim, the Court looks to the intentional act or acts which the plaintiff alleges form the basis of his claim. *See CitiFinancial Mortg. Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007). "The limitations period begins to run as soon as the events giving rise to the distress occur." *Gatheright v. Clark*, No. 16-60364, 2017 WL 728698, at *4 (5th Cir. Feb. 23, 2017) (per curiam) (citing *CitiFinancial Mortg. Co.*, 967 So. 2d at 19). However, consideration is made for a continuing tort, a repeated injury, such as the one present in the case *sub judice*; in such a situation, the statute of limitations begins to run on the date of the last injury or when the tortious acts cease. *See Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 148 (Miss. 1998). *See also Smith v. Isle of Capri Casinos, Inc.*, No. 4:13CV60-M-V, 2014 WL 2533181, at *6 (N.D. Miss. June 5, 2014) (statute of limitations began to run on intentional infliction of emotional distress from sexual harassment claim from point of last contact); *Disney v. Horton*, No. CIV.A. 2:99CV138, 2000 WL 1089930, at *2 (N.D. Miss. July 14, 2000) (examining when actions giving rise to claim occurred).

In this case, the intentional acts which Plaintiff alleges form the basis of his claim for intentional infliction of emotional distress are "mail fraud, wire fraud, forgery, perjury, and false misrepresentations." *See* Pl.'s First Am. Compl. [25] ¶ 46. Plaintiff cites specific dates upon which the alleged intentional acts giving rise to his claim occurred. He alleges the mail fraud and wire fraud involving the forged documents occurred "on or about September 15, 2014" and

7

"[o]n or about October 24, 2014." *Id.* ¶¶ 15, 25–26. He further alleges that during the appeal hearing on October 31, 2014, Defendant, "through its employer representative and human resources coordinator[] and its supervisor, . . . made materially false statements under oath regarding [Plaintiff's] receipt of and signatures on the Attendance Status Notification forms and whether they possessed any knowledge of forgery of [Plaintiff's] signature." *Id.* ¶ 29. Finally, Plaintiff alleges that "[b]oth the [Defendant's] human resources coordinator and [Plaintiff's] supervisor testified at the appeal hearing for the purpose of inducing the MDES to continue to deny [Plaintiff's] claim for unemployment compensation benefits." *Id.* ¶ 32. Plaintiff attaches supporting documentation to his complaint, including the MDES ALJ Decision and Board of Review Decision in the administrative proceeding. *See* MDES ALJ Decision [25-2] at 2–4; MDES Bd. of Review Decision [25-3] at 1. The Court finds that based on all of the foregoing, the intentional infliction of emotional distress claim did not accrue until October 31, 2014, the date of the appeals hearing when the perjury and some of the false representations allegedly occurred. Plaintiff's complaint is date-stamped November 2, 2015—two days after the expiration of the statute of limitations. However, Plaintiff maintains he actually filed the complaint on Friday, October 30, 2015, and the Clerk of Court treated the complaint as filed on Monday, November 2, 2015. Defendant makes no argument to the contrary.

The initial complaint is signed and dated October 30, 2015, *see* Pl.'s Compl. [1] at 6; and the civil cover sheet attached to the complaint is signed and dated October 31, 2015, *see* Civil Cover Sheet [1-3] at 1. The Court finds that Plaintiff's intentional infliction of emotional distress claim is not barred by the statute of limitations, because it was apparently filed on or before October 31, 2015. Accordingly, Defendant's argument on summary judgment concerning the statute of limitations on the intentional infliction of emotional distress claim is not well taken.

### (b) Intentional Infliction of Emotional Distress—Merits

Second, Defendant argues that Plaintiff's intentional infliction of emotional distress fails on its merits, because it fails to meet the extremely high standard to satisfy the claim under Mississippi law. Defendant specifically maintains in support of this argument that Plaintiff does not dispute any absences or tardies that the allegedly forged forms represent and further that allegedly documenting an employee's personnel file after the fact does not rise to the level of outrageous conduct necessary to sustain an intentional infliction of emotional distress claim.

Plaintiff argues in response that the requisite level of outrage is demonstrated in the allegations that Defendant fraudulently reproduced Plaintiff's signature on the Attendance Status Notification forms and then transmitted the forms to Defendant's agent, ADP, for transmission to the MDES for the purpose of depriving Plaintiff of unemployment compensation benefits. Plaintiff further argues that outrage is demonstrated by the MDES finding of forgery and the act of transmitting the documents to the MDES, a state agency that receives federal funding.

The Court finds that Plaintiff has alleged an actionable intentional infliction of emotional distress claim against Defendant that survives summary judgment. " '[M]eeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi.' " *Gatheright*, 2017 WL 728698, at *4 (citing *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (quoting *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss. 1993) (internal quotation marks omitted)). "Mississippi requires the conduct of the defendant be 'malicious, intentional, willful, wanton, grossly careless, indifferent[,] or reckless,' *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995), or 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community.' *Speed*, 787 So. 2d at 630 (internal quotation marks omitted) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996))." *Id.*

In his complaint, Plaintiff alleges in pertinent part that Defendant, "through the acts of its agents and employees, knowingly engaged in extreme and outrageous conduct, intolerable in a civilized society, including mail fraud, wire fraud, forgery, perjury, and false misrepresentations, in a scheme to deprive [Plaintiff] of unemployment compensation benefits to which he was lawfully entitled." Pl.'s First Am. Compl. [25] ¶ 46. Plaintiff alleges that these actions "intentionally or recklessly caused [Plaintiff] severe emotional distress and mental anguish." *Id.* In support of this claim, Plaintiff alleges very detailed facts concerning his former employer's alleged actions in connection with his unemployment benefits claim; these factual allegations are detailed above in the factual and procedural background and form the basis of Plaintiff's claims, including his claim for intentional infliction of emotional distress. The Court finds that Plaintiff's factual allegations rise to the level required by Mississippi law to sustain his intentional infliction of emotional distress claim against his former employer. Plaintiff has raised genuine disputes of material fact, including, but not limited to, whether Defendant intentionally forged the documents to prevent Plaintiff from obtaining unemployment compensation benefits. Accordingly, Defendant's motion for summary judgment shall be denied as to Plaintiff's intentional infliction of emotional distress claim.

**(2) Fraud**

Defendant next argues that Plaintiff's fraud claim fails, because Plaintiff did not rely on the allegedly forged documents, but instead immediately notified the ALJ that he did not sign the subject documents. Defendant further maintains that the claim fails, because Plaintiff cannot

10

demonstrate that he has suffered pecuniary loss and Plaintiff failed to file weekly certifications from the date he applied for unemployment compensation benefits.

Plaintiff argues in response that a fraud perpetrated on a third party that directly disadvantages a plaintiff can be actionable. He also argues that he can establish pecuniary loss because he was deprived of the use of his unemployment benefits between the date his claim was initially rejected, September 19, 2014, and the date of his successful appeal, October 31, 2014. Plaintiff further argues that he filed weekly certifications from the date he applied for unemployment compensation benefits.

Under Mississippi law, a plaintiff asserting a fraud claim must ultimately prove the following elements by clear and convincing evidence:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 739 (5th Cir. 2015) (per curiam) (quoting *Martin v. Winfield*, 455 So. 2d 762, 764 (Miss. 1984) (internal quotation marks omitted)); *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 835 (Miss. 2015), *reh'g denied* (May 26, 2016) (citing *Franklin v. Lovitt Equip. Co.*, 420 So. 2d 1370, 1373 (Miss. 1982) (citing *Cotton v. McConnell*, 435 So. 2d 683, 685 (Miss. 1983))).

In the case *sub judice*, Plaintiff alleges in pertinent part that Defendant, "through the acts of its agents and employees, knowingly made materially false representations, including forgery, to the MDES for the purpose of inducing the MDES and which did induce the MDES to render an unfavorable benefit determination against [Plaintiff] and thus injure him in his person and

property through the denial of unemployment compensation benefits." Pl.'s First Am. Compl. [25] ¶ 44. As stated above, Defendant's challenge to this claim goes to the following element: "[the hearer's] reliance on [the representation's] truth." *See In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d at 835. Plaintiff maintains that "Mississippi courts have permitted plaintiffs to bring claims of fraud based on allegations that a fraud committed on a third person was intended to directly harm the plaintiff." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [53] at 16. However, Plaintiff cites only one case in support of this statement, *Riley v. F.A. Richards & Associates, Inc.*, 16 So. 3d 708 (Miss. Ct. App. 2009), a case which is inapposite. In *Riley*, the Mississippi Court of Appeals affirmed the trial court's dismissal of a fraud claim based on a claim consultant's alleged misrepresentation to the plaintiff's physician that she was an advocate of plaintiff when she was actually an advocate of defendant—an allegation that was denied by competent evidence. *See Riley*, 16 So. 3d at 719. To prevail on a fraud claim under Mississippi law, a plaintiff must demonstrate that he "reasonably relied on the statement to [his] detriment." *Warren v. Horace Mann Life Ins. Co.*, 949 So. 2d 770, 773 (Miss. Ct. App. 2006) (citing *Beck Enters., Inc. v. Hester*, 512 So. 2d 672, 675 (Miss. 1987)). Stated another way, "[i]t is only if that untruth was designed to, and did, in fact, induce the hearer to change his position in justifiable reliance on the untruth that it becomes potentially actionable." *McGee v. Swarek*, 733 So. 2d 308, 312 (Miss. Ct. App. 1998). Although the facts alleged in this case are egregious, Plaintiff's failure to demonstrate his reliance on the forged documents is fatal to his fraud claim. Even if Plaintiff did not challenge the allegedly forged documents during the initial determination of his unemployment compensation benefits claim, Plaintiff has not demonstrated, or even attempted to argue in his response, that he relied upon the allegedly forged documents in any way. Instead, it is clear that he appealed the denial

of his unemployment compensation benefits claim and challenged the allegedly forged documents in his subsequent appeal to the MDES. For the foregoing reasons, the Court finds that Defendant's motion for summary judgment must be granted as to the fraud claim, and the same must be dismissed as a matter of law.

### (3) Tortious Interference with a Prospective Advantage

Defendant next argues that Plaintiff's tortious interference with a prospective advantage claim fails, because Plaintiff did not have a business relationship with the MDES, but instead had a merely statutory relationship with MDES, the state agency charged with the administration of unemployment benefits. Defendant cites only persuasive precedent from district courts outside the Fifth Circuit in support of this argument.

Plaintiff argues in response that no Mississippi court to date has considered whether an employer's use of forged documents and misrepresentations in connection with a claim for unemployment compensation benefits gives rise to a cause of action for tortious interference with a prospective advantage. Plaintiff further argues that Mississippi courts have not required that a strict business relationship be demonstrated in such claims and that tortious interference with a prospective advantage is the ideal claim to urge in this case involving an alleged "tortfeasor who engages in forgery and fraud to attempt to deprive a plaintiff of a prospective advantage in a government benefit." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [53] at 20.

To prevail on a claim of tortious interference with a prospective advantage, the plaintiff must prove the following by a preponderance of the evidence:

> (1) [t]he acts were intentional and willful; (2) [t]he acts were calculated to cause damage to the plaintiff[] in [his] lawful business; (3) [t]he acts were done with the unlawful purpose of

13

> causing damage and loss, without right or justifiable cause on the
> part of the defendant (which constitutes malice); [and] (4) [a]ctual
> damage and loss resulted.

*MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (quoting *Nichols v. Tri-State Brick and Tile*, 608 So. 2d 324, 328 (Miss. 1992) (internal quotation marks omitted)).

In the case *sub judice*, Plaintiff alleges in pertinent part that Defendant, "through the acts of its agents and employees, knowingly manufactured and tendered to the MDES forged documents and made materially false representations to the MDES . . . induc[ing] the MDES to render an unfavorable benefit determination against [Plaintiff] and thus injure him in his person and property through the denial of unemployment compensation benefits." Pl.'s First Am. Compl. [25] ¶ 47.

In *Cenac*, the Mississippi Supreme Court gives a detailed exposition of the history of tortious interference with prospective advantage claims; this thorough and detailed exposition does not at all support a claim of this nature and instead indicates the claim is intended to address wrongs done to someone's business. *See Cenac*, 609 So. 2d at 1269–1272. In *MBF Corp.*, the Mississippi Supreme Court stated about such claims: " '[W]hen a wrongdoer unlawfully diverts prospective customers away from one's business thereby "encouraging" customers to trade with another[,] [t]his is tortious interference with business relations or sometimes referred to as interference with prospective advantage.' " *MBF Corp.*, 663 So. 2d at 598 (Miss. 1995) (quoting *Cenac*, 609 So. 2d at 1268). In applying Mississippi law to this case, which the Court must do when sitting in diversity, the Court finds that Defendant's motion for summary judgment must be granted as to the tortious interference with prospective advantage claim, as such a claim is not

cognizable under Mississippi law on the facts alleged in this case. Therefore, Plaintiff's tortious interference with prospective advantage claim must be dismissed as a matter of law.

### (4) Negligent Training/Failure to Train and Supervision

Finally, Defendant challenges Plaintiff's negligent training and supervision claim on the ground that Defendant did not owe a duty to Plaintiff to train its employees on their ethical obligations in handling unemployment claims. Defendant maintains that the administration of unemployment benefits is within the province of the Mississippi Legislature and the MDES, which has promulgated regulations concerning the administration of such claims. Defendant further argues that the claim fails, because Plaintiff has not put forth specific evidence of Defendant's actual or constructive knowledge of its employee's tendency to engage in the behavior relevant to the injuries sustained, that is, to engage in forgery of documents. Defendant points to the deposition testimony of that employee, Barbara Davis, the human resources coordinator responsible for tracking Defendant's employees' attendance, that the only unemployment compensation claim she handled while employed by Defendant was Plaintiff's claim.

Plaintiff concedes that his negligent supervision may properly be dismissed, but argues with respect to its failure to train claim that "a creditable claim that [Plaintiff] was owed a duty of due care in the manner his unemployment claim was handled imposed a duty on [Defendant] to properly train its employees in handling such claims." Pl's Mem. Br. Supp. Resp. Opp'n to Def.'s Mot. Summ. J. [53] at 22. Plaintiff argues that the lack of training provided to Davis "resulted in forged documents and testimony being submitted to a state agency which caused pecuniary and emotional injury to [Plaintiff]." *Id.*

15

Plaintiff's supervision claim is properly dismissed, as agreed by the parties. However, a genuine dispute of material fact exists on Plaintiff's failure to train claim as to whether Defendant breached a duty of care to Plaintiff by failing to provide any training to its human resources coordinator in the proper processing of unemployment claims. The alleged acts of forgery of Plaintiff's signature on the Attendance Status Notification forms are egregious and far beyond simple mistake or inadvertence. Given the egregious nature of these factual allegations and the factual dispute over whether Defendant adequately trained its employee with respect to unemployment compensation benefits claims, the Court finds that this claim survives summary judgment and shall proceed to trial.

### (5) Collateral Estoppel on Forgery

Lastly, the Court addresses Plaintiff's argument that Defendant is collaterally estopped from denying it committed forgery based on the factual findings of the MDES. Defendant argues in response that the MDES ALJ only found fraud on the court, not fraud under Mississippi law, and thus, that Defendant is not collaterally estopped from challenging that a forgery occurred.

"The federal courts must give an agency's fact finding the same preclusive effect that they would a decision of a state court, when the state agency is acting in a judicial capacity and gives the parties a fair opportunity to litigate." *Stafford v. True Temper Sports*, 123 F.3d 291, 294 (5th Cir. 1997) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986)). "As far as Mississippi is concerned, the decisions of [the MDES] have preclusive weight in Mississippi courts, are appealable through the Mississippi court system, and even have the potential for review by the United States Supreme Court." *Id.* at 295 (citing MISS. CODE ANN. § 71–5–531). Under the doctrine of claim preclusion, otherwise known as collateral

16

estoppel, a litigant is "precluded from relitigating in the present suit specific questions actually litigated and determined by and essential to the judgment in the prior [proceeding], even though a different cause of action is the subject of the present suit." *Channel v. Loyacono*, 954 So. 2d 415, 425 (¶ 34) (Miss. 2007) (internal quotation marks and citations omitted). Collateral estoppel is "an unusual exception to the general rule that all fact questions should be litigated fully in each case" and is "neither mandatory nor mechanically applied." *Marcum v. Miss. Valley Gas Co.*, 672 So. 2d 730, 733 (Miss. 1996) (internal quotation marks and citations omitted). In the case *sub judice*, the Court finds that the issue of whether Defendant committed forgery was a finding of fact. In his thorough decision, the MDES ALJ made the following pertinent findings of fact:

> [I]t is the conclusion of the [ALJ] that the signature area containing the three signatures on page E5 of Employer's Exhibit 1, were intentionally and fraudulently duplicated onto pages E6–E10, with the intent to make pages E6–E10 appear to have been actually signed by the three persons ([Plaintiff], [Defendant's] employer witness, and [Defendant's] employer representative) whose 'signatures' appear on pages E6–10. This assessment does not require any expertise in handwriting analysis, but is a conclusion that any reasonable person would reach upon examining documents E4 (whose signatures differ markedly from E5–E10) and E5–E10 wherein the signatures are exact duplicates). The spacing, and slant of the signature blanks pointed out by [Plaintiff] also tend to indicate that an entire copied section of the page was cut out and copied over the other forms to achieve the duplication.
>
> . . .
>
> An agent of the employer . . . fraudulently copied the relevant signatures from the last existing form (E5) to forms E6–E10 in order to manufacture the appearance that these forms had been issued.
>
> This intentional forgery . . . .

17

*See* MDES ALJ Decision [25-2] at 3, 4. The ALJ apparently made these findings of fact after hearing testimony from Plaintiff, Defendant's employer representative, and Defendant's employer witness, and after reviewing the Attendance Status Notification forms introduced into evidence in the hearing. The MDES Board of Review affirmed the ALJ's decision in all respects. The Court finds that the MDES ALJ's findings of fact that a forgery was committed should be given preclusive effect in the case *sub judice*.

### IV. Conclusion

In sum, for all of the foregoing reasons, the Court finds that Defendant FXI, Inc.'s motion for summary judgment [44] shall be GRANTED IN PART AND DENIED IN PART, as follows:

(1) The motion shall be GRANTED with respect to the claims for fraud, tortious interference with prospective advantage, and negligent supervision; those claims shall be DISMISSED.

(2) However, the motion shall be DENIED with respect to the claims for intentional infliction of emotional distress and negligent training/failure to train; those claims shall PROCEED TO TRIAL.

(3) Defendant is collaterally estopped from claiming that a forgery was committed.

An order in accordance with this opinion shall issue this day.

THIS, the 15th day of May, 2017.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE

18